**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Sylvia R.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 2326** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **Frank Bisignano,** | ) | |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**[3]

Before the Court are Plaintiff Sylvia R's brief in support of reversing the decision

of the Commissioner of Social Security (Dkt. 15: Brief in Supp. of Rev. Decision of

Comm. of Soc. Sec., "Pl. Brief"), Defendant's memorandum in support of summary

judgment (Dkt. 16: Def. Mem. in Supp. of Mot. for Summ. J., "Def. Mem."), and

Plaintiff's reply (Dkt. 17: Plaintiff's Reply Brief, "Pl. Reply").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On March 12, 2025 by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 9.)

### I.  Procedural History

Plaintiff applied for disability insurance benefits on March 12, 2021, alleging disability from October 8, 2020. (R. 15, 238-44.) Plaintiff's claims were initially denied on August 9, 2021 (R. 65-71) and upon reconsideration on January 8, 2023. (R. 96-120.) Plaintiff subsequently appealed and appeared with counsel at a telephone hearing before ALJ Karen Sayon on November 6, 2023 (R. 35-63.) A vocational expert also testified at the hearing. On January 19, 2024, the ALJ issued a decision finding Plaintiff not disabled. (R. 15-28.) On January 3, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) *See* 20 C.F.R. § 404.981. After considering the briefs and evidence, the Court grants the Commissioner's motion for summary judgment and denies Plaintiff's motion for remand.

### II.  ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 8, 2020. (R. 17.) At Step Two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the bilateral

hips, cervical spondylosis and stenosis,[4] lumbar anteriolisthesis with facet arthropathy,[5] carpal tunnel syndrome, and obesity. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 21.) Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except she could engage in no climbing ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crawl, and climb ramps and stairs, frequently handle and finger bilaterally, have no concentrated exposure to hazards (defined as work at heights) (R. 22.)

At Step Four, the ALJ determined Plaintiff could perform her past relevant work as a college admissions evaluator. (R. 28.) Therefore, the ALJ found that Plaintiff was not disabled (*Id.*)

## III.    Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[4]Cervical spondylosis is a general term for age-related wear and tear affecting the spinal disks of the neck. Mayo Clinic, *Cervical spondylosis*, https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 - (*Visited on* March 31, 2026). Cervical stenosis refers to a narrowing of the spinal cord in the neck region. Cleveland Clinic, *Spinal Stenosis*, https://my.clevelandclinic.org/health/diseases/17499-spinal-stenosis (*Visited on* March 31, 2026).

[5] Lumbar anteriorlisthesis is a type of spondylolisthesis, a condition where one of the vertebrae slips out of alignment and presses on the vertebra below it. Cleveland Clinic*Spondylolisthesis*, https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis (*Visited on* March 31, 2026).

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply

4

the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.    Analysis

Plaintiff argues that the case must be remanded for three reasons. First, she contends that the RFC was not supported by substantial evidence. (Pl. Brief at 1.) Next, she contends that the ALJ's consideration of her subjective symptoms was legally insufficient (*Id*.), and finally she argues that the ALJ's finding that she could perform her past work was not supported by substantial evidence. (*Id*.)

### A. Substantial Evidence Supported the RFC

Plaintiff attacks the RFC on two independent grounds. She argues that the determination that she could perform sedentary work failed to take into account evidence that she had a limited ability to sit. (Pl. Brief at 2.) Separately, she argues that substantial evidence does not support a finding that she could frequently handle and finger. (*Id*.) The Court will address each issue in turn.

The ALJ considered both objective and subjective evidence before determining Plaintiff had an RFC to perform sedentary work with additional postural restrictions.

5

As relevant here, Plaintiff does not argue that the ALJ wrongly evaluated evidence about her limited ability to stand and walk. Instead, she argues that she was unable to perform even sedentary work because the evidence showed she was unable to sit for the six hours out of an eight-hour workday that sedentary work requires. (Pl. Brief at 2.)

To that end, Plaintiff contends that the ALJ missed an entire line of evidence concerning her alleged inability to sit for long periods of time. (*Id.*) The crux of her argument is that the ALJ did not mention her diagnosis of lumbar radiculopathy, *i.e.* that her lower back pain sometimes radiated into her legs. (Pl. Brief at 3.) Because lumbar radiculopathy can cause pain when sitting, Plaintiff argues that the ALJ's determination that she could sit for long enough to perform sedentary work was not supported by substantial evidence. (*Id.*)

The fact that Plaintiff was diagnosed with lumbar radiculopathy does not mean she was automatically entitled to a sitting limitation in her RFC. *See Nicole M. v. Kijakazi*, No. 21 C 6441, 2023 WL 2138767, at *5 (N.D. Ill. Feb. 21, 2023) (concluding that "a diagnosis alone does not establish that an impairment is severe or disabling"); *Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011) (finding that even if Plaintiff had impairment, it does not relieve plaintiff of requirement to show limitations and prove disability).

Other than her diagnosis, Plaintiff's evidence that she had sitting limitations consists primarily of her general complaints she made in her function report and to her

doctors of pain she experienced when sitting. (Pl. Brief at 2.) Contrary to Plaintiff's argument, the ALJ addressed this evidence, discussing her complaints of pain in her lower back, hips, and legs. (R. 25.) For example, the ALJ described Plaintiff's complaint to an orthopedist that her lumbar pain was a 5/10 when sitting and standing, (R. 25, *citing* R. 786) and a later complaint that her pain sometimes radiated into her buttocks and was worse when standing and walking. (*Id., citing* 788-89.) The ALJ also discussed at length Plaintiff's diagnosis of advanced osteoarthritis in her hips and her left hip replacement surgery in 2023. (R. 26.) As the ALJ noted, within two weeks of surgery Plaintiff was only taking pain medication occasionally and was discharged from physical therapy for failure to attend; she later testified that she could manage her rehabilitation through home exercises. (*Id.*)

Plaintiff does not point to any objective evidence that she was unable to sit long enough to perform sedentary work, let alone that she was unable to sit because of lumbar radiculopathy. In fact, in one of the records Plaintiff cites to support a sitting limitation, she explicitly denied radiating pain, numbness, or tingling. (Pl. Brief at 2, *citing* R. 565.) To the extent Plaintiff argues that her subjective complaints should have been given greater weight, it is not the Court's role to "reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025).

Additionally, the ALJ directly addressed Plaintiff's allegation that she was unable to sit long enough to perform sedentary work. Specifically, she explained that none of Plaintiff's treatment providers noted that Plaintiff was unable to sit comfortably throughout her examinations and consultations. (R. 24.) Plaintiff argues that the ALJ's reasoning was illogical because there is no evidence that her medical examinations lasted longer than the hour she testified she could sit.

But it is Plaintiff's burden to prove her limitations, not the ALJ's burden to disprove them. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (ALJ does not have burden to prove Plaintiff is not disabled), *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). The ALJ concluded that Plaintiff's ability to sit through medical appointments was evidence that she could perform sedentary work and the Court will not reweigh that determination.

In sum, the Court disagrees that the ALJ missed an entire line of evidence concerning Plaintiff's ability to sit. Therefore, it finds that substantial evidence supports the ALJ's determination that Plaintiff could perform sedentary work.

Next, the ALJ determined that Plaintiff was limited to frequent bilateral handling and fingering due to her history of carpel tunnel syndrome and her cervical spondylosis and stenosis. (R. 26.) Plaintiff argues that this explanation is lacking because it does not identify what evidence supports a limitation to frequent (as opposed to occasional) handling and fingering. (Pl. Brief at 4.)

8

The ALJ discussed in detail the evidence concerning Plaintiff's January 2021 carpal tunnel syndrome treatment, surgery, and subsequent recovery. (R. 23.) Specifically, she noted that by April 2021, Plaintiff had improved with occupational therapy to the point that she had full range of motion, intact sensation, and minimal weakness. (*Id.*) Also by April 2021, Plaintiff reported being able to carry groceries, prepare food, dress/use buttons, and open jars, and had made significant gains in in her wrist and finger range of motion and grip/pinch strength. (*Id.*) As the ALJ noted, Plaintiff was discharged from supervised occupational therapy to continue exercises at home; the record shows no further treatment for carpal tunnel syndrome. (*Id.*)

The ALJ considered both subjective and objective evidence that Plaintiff's cervical spondylosis and stenosis affected her ability to handle and finger. First, the ALJ acknowledged Plaintiff's complaints of pain and weakness, her reports that she continued to drop things, and her reports that she still had difficulties opening jars, buttoning, and tying shoelaces. (R. 24, 27.)[6] The ALJ also discussed objective evidence showing that Plaintiff had ongoing wrist and hand issues related to problems in her cervical spine. For example, she noted that in December 2021, while Plaintiff had well-preserved cervical range of motion without tenderness, she had diminished sensation in

---

[6] The administrative record numbered the ALJ's opinion out of order and so some of the citations to the opinion do not reflect consecutive pages.

9

her fingers and a positive Tinel's test bilaterally.[7] (R. 25.) In February 2022, Plaintiff complained of moderate pain and numbness in her neck and wrists, among other areas, and still displayed diminished sensation in her fingers. (*Id.*) A March 2022 cervical MRI showed mild to moderate degenerative changes of her cervical spine. (*Id.*) In September 2023, Plaintiff had neck pain that radiated down her bilateral arms and reduced range of motion in her neck but intact sensation and full strength in all extremities. (R. 26.)

Despite the ALJ's extensive discussion of evidence both supporting and undermining Plaintiff's claims, Plaintiff recites a laundry list of complaints and abnormal findings and argues that they support a greater fingering and handling limitation than the ALJ assessed. But the ALJ considered most, if not all, of the evidence Plaintiff cites before she determined that Plaintiff could frequently handle and finger.

"An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Plaintiff does not point out any evidence, let alone a line of evidence, that the ALJ omitted. Plaintiff's argument is in essence a request that the Court reweigh the evidence, which of course it will not do.

---

[7] Tinel's test is a non-invasive procedure to elicit a tingling sensation, indicating possible nerve compression or damage to a particular nerve. Cleveland Clinic, *Tinel's Sign*, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (*Visited on* March 30, 2026.)

Additionally, in determining that Plaintiff could frequently handle and finger, the ALJ rejected an opinion by the state agency doctor at the initial level that Plaintiff could only handle and finger occasionally. The ALJ explained that the opinion was rendered in August 2021, during the short window while Plaintiff was recovering from her carpal tunnel surgery, and that a limitation to occasional handling and fingering was not supported by the longitudinal evidence. (R. 24.) That is, the ALJ found that the evidence as a whole supported a finding that Plaintiff could handle and finger more than occasionally, *i.e,* frequently. *See, e.g., Rabdeau v. Bisignano*, 155 F.4th 908, 913 (7th Cir. 2025) (affirming ALJ decision that "sufficiently contended" with evidence and "ultimately weighed the equivocal record in a way that disfavors" the claimant). The ALJ's decision is supported by substantial evidence.

### B.      The ALJ's Subjective Symptom Analysis was not Patently Wrong

Next, Plaintiff's contention that the ALJ's evaluation of her subjective statements "failed to consider relevant factors and failed to explain her analysis of factors she did consider" is a nonstarter. (Pl. Br. at 6.) The regulations instruct ALJs to consider several factors in evaluating a claimant's subjective statements, including the intensity and limiting effects of symptoms, treatment and efficacy, work during disability period, daily activities, and statements inconsistent with the record. *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025); 20 C.F.R. § 404.1529; SSR 16-3p. The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong,

11

which means that the decision lacks any explanation or support." *Id.* (internal citations and quotations omitted).

The ALJ's review of Plaintiff's subjective symptoms included adequate discussion of the SSR 16-3p criteria. She discussed factors that aggravated Plaintiff's pain, such as movement, and those that relieved Plaintiff's pain, such as medication, surgery, and physical therapy. (R. 23, 25.) The ALJ also considered Plaintiff's treatment, test results, and surgical history, her daily activities, and the inconsistencies between the evidence and Plaintiff's allegations of disabling symptoms.

For example, the ALJ noted that despite Plaintiff's testimony that she could only sit, stand, or walk for short periods of time, she was regularly observed with no significant deficits in strength, no need for an assistive device, and normal ambulation. (R. 24.) She could climb on and off the examination table without difficulty, her straight leg raising tests were repeatedly negative, and despite reporting difficulties with her hands, retained the ability to open jars, button, eat with her right hand, cook normally, and drive. (*Id.*) Plaintiff also had the ability to engage in additional daily activities such as vacuuming, climbing stairs, bathing, and dressing herself. (*Id.*)

Nevertheless, Plaintiff contends that the ALJ's consideration of her subjective symptoms was patently wrong because the evidence the ALJ cited was not inconsistent with Plaintiff's testimony about the severity of her symptoms. (Pl. Brief at 7.) For example, Plaintiff disagrees that her ability to sit throughout a medical appointment

12

contradicted her testimony that she could only sit for about an hour because there was no evidence that any of her appointments lasted longer than that. (*Id.*) She also argues that the ALJ failed to explain how evidence such as Plaintiff's ability to get on and off the exam table or her negative straight leg raising test was inconsistent with her testimony about the severity of her symptoms.

Again, Plaintiff's reasons are merely disagreements with the way the ALJ weighed the evidence, a conclusion bolstered by Plaintiff's own list of complaints and examination findings that she says support her claims of disabling symptoms. But the fact that some of the evidence "could" support a finding of disability does not mean that the ALJ's evaluation of that evidence was patently wrong. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *See L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

Plaintiff also argues that the ALJ was incorrect to state that Plaintiff did not exhibit strength deficits (Pl. Brief at 7), but a careful look at the record reveals no error. What the ALJ actually wrote was that Plaintiff was "regularly observed with no significant deficits in strength." (R. 24.) Plaintiff cites a number of treatment records that generally record Plaintiff's strength in her extremities as ranging from a four, four-plus, or five out of five. (Pl. Brief at 7.) The Court disagrees that such findings are inconsistent with the ALJ's assessment that Plaintiff had "no significant" strength deficits.

13

Plaintiff's other arguments concerning her subjective symptoms are again requests to reweigh the evidence. For example, she disagrees with the ALJ's conclusion that she improved enough to work following carpal tunnel surgery because the record also contains evidence that she continued to have some pain and numbness and reduced sensation in her fingers. (Pl. Brief at 9.) She cites *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) for the proposition that "The key is not whether one has improved . . . but whether [he] has improved enough to meet the legal criteria of not being classified as disabled." The fact that the ALJ considered Plaintiff's improvement does not shift the burden away from Plaintiff to prove that she was disabled. The ALJ considered the evidence and found that Plaintiff improved enough after her surgeries and treatment to work at the RFC level the ALJ assessed. Such a determination is not erroneous.

Plaintiff also argues that the ALJ's consideration of her daily activities did not mean she was able to perform full-time work. (Pl. Brief at 10.) But the ALJ did not equate Plaintiff's daily activities with the ability to work; instead, she properly considered them as one factor in her analysis of Plaintiff's subjective symptoms.

Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). In this case, the ALJ considered both positive and

14

negative evidence of Plaintiff's subjective allegations and decided that it did not support a finding of disability. The analysis was not patently wrong.

### C. The ALJ's Step Four Finding was Supported with Substantial Evidence.

Plaintiff claims that the ALJ erred at step four of her decision because she did not make specific findings regarding whether Plaintiff's RFC permitted her to perform past work. (R. 11.) Specifically, she argues that the ALJ was required to discuss "the individual's RFC, the physical and mental demands of the past work, and a finding that the claimant's RFC would permit return to that past work." (Pl. Brief at 12.) Plaintiff relies primarily on SSR 82-62 and *Nolen v. Sullivan*, 939 F.2d 516, (7th Cir. 1991) in making her argument. (*Id.*) But in *Nolen*, the ALJ only described the plaintiff's previous job as "unskilled at the light exertional level" and did not describe the tasks entailed or relate them to the plaintiff's existing limitations. *Id*. at 519 (citation modified). Here, Plaintiff testified about her prior work and the skills and duties it entailed. (R. 46-47.) The ALJ then described the eventual RFC to the vocational expert ("VE") and asked the VE to testify if Plaintiff could perform her prior work. (R. 59-61.)

The VE testified that all of Plaintiff's prior positions could be classified under the DOT title for admissions evaluator, DOT code 205.367-010. (R. 59.) He testified that based on the hypothetical provided by the ALJ, Plaintiff could perform her prior work both as the position is generally performed as described in the Dictionary of Occupations Titles ("DOT") and as plaintiff actually performed it. (*Id.*) Contrary to

15

Plaintiff's assertions, the VE specifically confirmed that the RFC's postural limitations were consistent with Plaintiff's past work. (R. 60-61.) The ALJ accepted the testimony of the VE in accordance with SSR 00-4p, as it was consistent with the information contained in the DOT. (R. 28.) As such, the ALJ found that plaintiff could perform her past relevant work.

As long as the ALJ performed those steps, "the ALJ was not required to provide a more detailed description of [p]laintiff's past work nor was she required to further elaborate on his alleged limitations in performing the job." *Colin C., Plaintiff, v. Frank Bisignano, Comm'r of Soc. Sec., Defendant.*, No. 25 CV 03064, 2026 WL 879496, at *2 (N.D. Ill. Mar. 30, 2026), *citing Patrick V. W. v. Saul*, No. 19 C 1297, 2020 WL 7353443, at *6 (N.D. Ill. Dec. 15, 2020) (citation modified). *See also, Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007) ("Here, the ALJ considered the specific jobs Cohen held, so *Nolen* is inapplicable.")

Plaintiff separately suggests that the Court should adopt SSR 24-2p, which limits past relevant work to that which occurred in the past five years, as opposed to the fifteen-year limit in SSR 82-62. (Pl. Brief 12-13.) If the Court only looked at the last five years, Plaintiff explains, she would have no prior relevant work because she stopped working in 2020. (*Id.*) Plaintiff acknowledges that SSR 24-2p was not in effect at the time of the ALJ's decision, and that the regulation specifically directs courts to apply the fifteen-year time frame for cases with ALJ decisions dated prior to June 22, 2024. Only if

16

a case is remanded will a court then apply the new five-year limit to the entire time period. But the Court here affirms the ALJ's decision, so Plaintiff's argument that SSR 24-p should apply is moot.

**CONCLUSION**

For the reasons explained above, the Court grants Defendant's motion for summary judgment (Dkt. 16) and denies Plaintiff's request for remand (Dkt. 15.)

**SO ORDERED.**

         **ENTER:**

         _____

         **LAURA K. MCNALLY**
         **United States Magistrate Judge**

**DATED: 4/24/2026**